IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SPENCER BROWN, | CASE NO. 4:22-CV-01284-DAR |
| Plaintiff, | JUDGE DAVID A. RUIZ |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN MICHAEL SWARTZ,[1] | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Representing himself, Petitioner Spencer Brown petitioned on July 20, 2022 for a writ of habeas corpus. (ECF #1). The District Court has jurisdiction under 28 U.S.C. § 2254(a). On September 15, 2022, this matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Sept. 15, 2022). Respondent Douglas Fender, as Warden of the Lake Erie Correctional Institution (hereinafter, the State), filed the Return of Writ (including the state court record) on November 16, 2022. (ECF #8). Mr. Brown filed a Traverse to Return of Writ on February 1, 2023. (ECF #9).

For the reasons below, I recommend the District Court **DISMISS** the petition. I further recommend the District Court **DENY** a certificate of appealability.

---

[1] While the petition was pending, Mr. Brown was transferred to the Toledo Correctional Institution where Michael Swartz is the warden. Under Fed. R. Civ. P. 25, I substitute Mr. Swartz as the Respondent.

1

PROCEDURAL HISTORY

A.     Factual findings of the Court of Appeals

The Ohio Court of Appeals, Seventh Appellate District, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Mr. Brown rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Seventh District determined:

> {¶2} On November 8, 2018, officers from Youngstown Police Department ("YPD") were dispatched to 702 Pasadena in Youngstown, Mahoning County, Ohio, an asserted high crime area. YPD detective division received an anonymous tip that some individuals were at 702 Pasadena removing property from the residence. Officers were dispatched in reference to a disturbance.
>
> {¶3} Upon arrival, officers observed Appellant's vehicle, a late model Oldsmobile, parked half on the roadway and half on the devil strip in violation of Youngstown Codified Ordinance 351.03. Appellant was seated in the driver's seat. In the backseat was a television. A door at 702 Pasadena appeared to have been kicked in, damaged, contained a small hole, and was partially open. Appellant acknowledged there was a small hole in the door but claimed it could not be seen through the screen door from the street.
>
> {¶4} Upon questioning, Appellant indicated he lived at 702 Pasadena. However, Appellant could not produce any documentation verifying that location as his address at that time. The officers then asked Appellant to step out of his vehicle and they conducted a *Terry* pat-down. The officers discovered a semi-automatic handgun in the pocket of Appellant's hooded sweatshirt. Appellant was placed under arrest. A search incident to arrest also revealed cocaine, heroin, and a digital electronic scale.
>
> {¶5} On January 3, 2019, Appellant was indicted by the Mahoning County Grand Jury on five counts: count one, possession of cocaine, a felony of the first degree, in violation of R.C. 2925.11(A) and (C)(4)(e), with a forfeiture specification in violation of R.C. 2941.1417; count two, having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2), (3), and (B); count three, possession of heroin, a felony of the fourth degree, in violation of R.C. 2925.11(A) and (C)(6)(b), with a forfeiture specification in violation of R.C. 2941.1417; count four, improperly handling firearms in a motor vehicle, a felony of the fourth degree, in violation of R.C. 2923.16(B); and count five, carrying concealed weapons, a felony of the fourth degree, in violation of R.C. 2923.12(A)(2) and (F). Appellant retained counsel and pleaded not guilty at his arraignment.

{¶6} On April 16, 2019, Appellant filed a motion to suppress. Appellant submitted that the stop, detention, and search and seizure violated his constitutional rights. Appellee, the State of Ohio, filed a response in opposition on May 3, 2019. The State indicated that Appellant's vehicle was illegally parked, and that the pat-down and subsequent seizure of evidence did not violate the Fourth Amendment. A hearing was held on July 3, 2019.

{¶7} Sergeant Nicholas Bailey with YPD testified for the State that he was a K-9 handler assigned to the Patrol Division on the date at issue, November 8, 2018. Sergeant Bailey responded to a call in which two other officers were dispatched to 702 Pasadena, a "high crime area," where the night before, three people were murdered outside of that location. Officers were called because someone was removing items from the residence.

{¶8} When Sergeant Bailey arrived in his marked cruiser, he observed an Oldsmobile illegally parked half on the roadway and half on the devil strip in violation of Youngstown Codified Ordinance 351.03. Sergeant Bailey activated his overhead lights, advised radio dispatch, and parked behind the car. Sergeant Bailey approached the vehicle. He observed Appellant sitting in the driver's seat, a television in the backseat, and a puppy in a cage on the passenger's floorboard. Sergeant Bailey observed that a door to the residence was kicked in and the home appeared to have been burglarized. Appellant said he resided at the house but could not provide any sort of proof of residency at that time.

{¶9} Officers Wallace and Martini with YPD arrived at the scene. Sergeant Bailey told the officers that there was a television in Appellant's backseat, that it looked like a door to the residence was kicked in, and that this may be a burglary. Appellant was asked to step out of his vehicle due to the possibility that he could be armed, dangerous, and a burglar. Appellant stepped out of his vehicle and complied with a pat-down of his person. It immediately became apparent to Sergeant Bailey that Appellant had a semi-automatic handgun in the front pocket of his hooded sweatshirt. Sergeant Bailey informed Officer Wallace in code that he felt a weapon on Appellant. Sergeant Bailey recovered the firearm from Appellant's pocket, cuffed him from behind, and placed him under arrest.

{¶10} Sergeant Bailey and Officer Wallace then conducted a search incident to arrest. They found a bag of cocaine and around $714 in Appellant's front pants pocket. Also recovered from Appellant was a bag that contained cocaine and heroin as well as a digital electronic scale.

{¶11} Officer George Wallace, Jr. was called to testify for the defense. Officer Wallace was on patrol duty on November 8, 2018. He was dispatched to 702 Pasadena in reference to a possible burglary in progress. Upon his arrival, he observed Appellant's

3

vehicle illegally parked halfway up on the devil strip in front of the residence. Officer Wallace provided assistance to Sergeant Bailey, who was speaking with Appellant. Officer Wallace observed a television in the backseat of Appellant's vehicle. Appellant said he lived at the residence and that some of his family members also stayed there. After a minute or so, Officer Martini arrived. Officer Wallace said that dispatch had sent a "Signal 8" for an investigation rather than a "Signal 1 or Signal 3" for a burglary. He said the door that appeared to be kicked in and damaged, was also slightly open.

{¶12} On cross-examination, Officer Wallace testified that the pat-down search revealed a firearm on Appellant. Cocaine and heroin were also discovered on Appellant's person. The prosecutor asked Officer Wallace, "So just because something is an investigation doesn't mean you can't arrest somebody when you get there?" Officer Wallace replied, "Yes; and, also, depending on how the call is given out. I don't really rely upon the call takers to give me the correct information or give me the right signals for the calls."

{¶13} On re-direct examination, Officer Wallace said he did not know how long the door to the residence had been damaged.

{¶14} Appellant testified that on November 8, 2018, he had been living at 702 Pasadena for about one month. Appellant's brother and his friend also lived there. Appellant stated there was a hole in a door but said that it was not visible from the street. Appellant indicated both the door and screen door were closed and locked. Appellant acknowledged that he was parked on the devil strip when the officers arrived. Appellant said he was sitting in his car FaceTiming his mother with his cell phone and keys in his hands. Appellant gave Sergeant Bailey his ID and told him he lived at the residence.

{¶15} On cross-examination, Appellant stated there was a television in his backseat and a hole in a door to the residence. Appellant said he did not walk around with Sergeant Bailey and did not know what the officer actually saw.

{¶16} On August 28, 2019, the trial court denied Appellant's motion to suppress. Specifically, the court referenced and considered the stop and the traffic violation; determined that the officers had a reasonable suspicion of criminal activity (burglary) supported by articulable facts to detain Appellant for limited questioning; to ask Appellant to step out of the vehicle; and to pat him down for officers' safety.

{¶17} On November 4, 2019, Appellant withdrew his former not guilty plea and entered a plea of no contest to the charges as contained in the indictment. The trial court accepted Appellant's no contest plea after finding it was made in a knowing, voluntary, and intelligent manner pursuant to Crim.R. 11. The court sentenced Appellant to a total term of seven years in prison . . . .

(ECF #6-1 at PageID 167-71 (citations omitted); *see also State v. Brown*, No. 19 MA 0136, 2021 WL 3701737 (Ohio Ct. App. Aug. 12, 2021)).

**B.     Trial court proceedings**

On January 3, 2019, a Mahoning County grand jury indicted Mr. Brown as follows:

- Count One: Possession of cocaine, in violation of Ohio Revised Code § 2925.11(A);

- Count Two: Having weapons under disability, in violation of Revised Code § 2923.13(A);

- Count Three: Possession of heroin, in violation of Revised Code § 2925.11(A);

- Count Four: Improperly handling a firearm in a motor vehicle, in violation of Revised Code § 2923.16(B); and

- Count Five: Carrying concealed weapons, in violation of Revised Code § 2923.12(A).

(ECF #6-1 at PageID 62-64).

On April 16, 2019, Mr. Brown moved to suppress evidence found on his person and seized from his vehicle, alleging a Fourth Amendment violation. (*Id.* at PageID 68-69). After an evidentiary hearing, the trial court denied the motion after finding the officers "had reasonable suspicion of criminal activity supported by articulable facts to detain the Defendant and for limited questioning, to ask the Defendant to step out of the vehicle and to pat him down for officer safety." (*Id.* at PageID 90-93).

On November 4, 2019, Mr. Brown withdrew his former not-guilty plea and pleaded no contest to the charges in the indictment. (*Id.* at PageID 94-100). The trial court sentenced Mr. Brown to seven years' imprisonment. (*Id.* at PageID 102-04).

5

C.   Direct appeal

On December 3, 2019, through new counsel, Mr. Brown appealed to the Seventh District. (ECF #6-1 at PageID 106). In his appellate brief, Mr. Brown alleged the trial court erred in denying his motion to suppress because the officers did not have reasonable and articulable suspicion that he was engaged, or about to be engaged, in criminal activity. (*Id.* at PageID 108-45). In response, the State argued that competent and credible evidence supported denying the motion to suppress. (*Id.* at PageID 147-64). On August 12, 2021, the Seventh District affirmed the trial court's judgment denying the motion to suppress. (*Id.* at PageID 166-77; *see also Brown*, 2021 WL 3701737).

Mr. Brown moved for leave to file a delayed appeal to the Supreme Court of Ohio. (*Id.* at PageID 179-88). That court granted Mr. Brown's motion and directed him to file a memorandum in support of jurisdiction. (*Id.* at PageID 202). In his memorandum, Mr. Brown argued the police officers violated his Fourth Amendment rights when they conducted a traffic stop, detention, search, and seizure without having a reasonable, articulable suspicion that he was engaged in criminal activity to justify those actions. (*Id.* at PageID 204-19). On April 12, 2022, the Supreme Court of Ohio declined jurisdiction of the appeal. (*Id.* at PageID 235).

FEDERAL HABEAS PETITION

On July 20, 2022, representing himself, Mr. Brown filed his petition in this Court alleging "The Fourth Amendment to the United States Constitution in Conjunction with Article 1, Section 14 prohibits the unlawful search and seizure of evidence based on an alleged traffic violation that never occurred to justify a *Terry*-Stop-Pat-down." (ECF #1-1 at PageID 17) (cleaned up). On November 14, 2022, before the State filed an Answer, Mr. Brown filed an amended

6

petition that revised the wording, but not the substance, of his sole ground for relief, stating as follows:

> The adjudication on the merits in the State court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, involving Petitioner's claim that the trial court erred in denying his motion to suppress as the police officers failed to have a reasonable and articulable suspicion that petitioner was engaged or about to be engaged in criminal activity in violation of the Fourth and Fourteenth Amendments.

(ECF #5 at PageID 41). Mr. Brown set forth the supporting facts as follows:

> Appellant argued in his direct appeal before the Seventh District Court of Appeals that the trial court erred in denying his motion to suppress. Specifically, Appellant alleges that the Officers' observations of a hole in a door to the residence coupled with the presence of a television in the backseat of his vehicle did not constitute a reasonable, articulable suspicion that he was engaged in, or about to be engaged in, criminal activity justifying the stop and search.
>
> The Seventh District Court of Appeals affirmed the trial court's judgment denying appellant's motion to suppress on alleged facts presented, that the officers, after receiving an anonymous tip and during a lawful traffic stop, formulated a reasonable, articulable suspicion of burglary after observing a television in the backseat of Appellant's vehicle; after determining that Appellant could not produce any proof at the time of the stop that he lived at 702 Pasadena; and after observing a door to the residence that contained a hole, was kicked in and damaged, and was slightly open.
>
> The Seventh District Court of Appeals further held that officers properly asked Appellant to step out of his vehicle due to the possibility that he could be armed, dangerous, and a burglar. In addition, competent, credible evidence exists to show that the officers had a reasonable articulable suspicion to perform a *Terry* pat-down search of Appellant. Based on the totality of the circumstances, the trial court did not err in denying Appellant's motion to suppress.
>
> Appellant contends that the issue of a traffic stop was never an issue that was conducted by (YPD) Youngstown Police Department to justify the traffic stop, detention, and search and seizure of evidence. In fact, this was the main point raised in the oral argument hearing before the court of appeals. That issue later came up as a defense by the State during the suppression hearing in relation to Appellant's motion to suppress.

> Appellant contends that [YPD] never cited him for an alleged illegal parking violation when they arrived at his residence. They were never there for that. They were there investigating an [anonymous] tip of a break in that was later verified to be appellant's residence.
>
> Appellant submits that the stop, detention, and search and seizure violated his constitutional rights. The issue of whether Appellant's vehicle was illegally parked was never the issue that led to the stop, detention, and search and seizure of his persons/vehicle and subsequent seizure of evidence did violate the Fourth Amendment to the United States Constitution.
>
> Here in this instant case, there was never a traffic violation that occurred as argued before the Court of Appeals in oral arguments. In fact, appellant was never cited or given a ticket for illegally parking. That evidence does not exist because the alleged traffic stops never occurred, only as a defense to the State through the suppression hearing in order to justify the illegal search and seizure of evidence against appellant. In addition, there was never a reasonable articulable suspicion that criminal activity had occurred, as it was confirmed on cross-examination by Sergeant Bailey whom later indicated that Appellant's mother and landlord subsequently confirmed that 702 Pasadena was Appellant's residence. Never establishing that a crime has occurred "burglary" violating appellant's Fourth Amendment protections against illegal search and seizure that warranted the evidence taken from appellant to be suppressed.

(ECF #1-1 at PageID 17-19).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Brown's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an

8

unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

## DISCUSSION

In his sole ground for relief, Mr. Brown disputes the correctness of the trial court's decision on the Fourth Amendment claim. He asserts the anonymous tip relating to a possible burglary and the police officers' observation of a hole in the door of the residence coupled with the presence of a television in his vehicle did not constitute a reasonable articulable suspicion that he was engaged in, or about to be engaged in, criminal activity; thus, the state courts erred in failing to conclude that the evidence must be suppressed in light of the violation of his Fourth Amendment right to be free from unreasonable searches and seizures. (ECF #8 at PageID 386). In response, the State contends the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976), precludes federal habeas review of a petitioner's claim stemming from the denial of his motion to suppress and from the state courts' adjudication of the Fourth Amendment issues raised in that motion. (ECF #6 at PageID 53-56).

Federal habeas corpus review of a petitioner's Fourth Amendment claim is generally prohibited when the petitioner received "the opportunity for full and fair consideration" of that claim in state court. *Stone*, 428 U.S. at 481-82. In the Sixth Circuit, a "full and fair opportunity" to litigate the claim "means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Thus, absent a "sham proceeding,

9

there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claims." *Id.*

To determine whether a petitioner was afforded a full and fair opportunity to litigate a Fourth Amendment claim in the state courts, a federal district court conducts two distinct inquiries: (1) "whether the state procedural mechanism, in the abstract, presents the opportunity to raise such a claim," and (2) "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). In making these two inquiries, the correctness of the state court's decision on the Fourth Amendment issue is irrelevant. *Id; see also Good,* 729 F.3d at 640.

Turning to the first inquiry, the mechanism for resolution of Fourth Amendment claims in Ohio "is, in the abstract, clearly adequate," providing a defendant the opportunity to file a pretrial motion to suppress and the opportunity to take a direct appeal from the denial of the motion to suppress. *Riley,* 674 F.2d at 526. Under the second inquiry, there is no indication the state failed to provide Mr. Brown the adequate mechanism to address his Fourth Amendment claims. Mr. Brown presented his motion to suppress in the trial court and the court denied it after hearing testimony and taking evidence. (ECF #6-1 at PageID 90). Mr. Brown then presented the claim to the state appellate court, which rejected the claim after thorough review. (ECF #6-1 at PageID 166-76; *see also Brown,* 2021 WL 3701737 (Ohio Ct. App. Aug. 12, 2021)). Mr. Brown has established no failure of Ohio's procedural mechanism that frustrated presentation of his Fourth Amendment claim in the Ohio courts. Because Mr. Brown received a full and fair opportunity to litigate his Fourth Amendment claim, review of that claim through a habeas corpus petition is precluded under *Stone v. Powell. See Good,* 729 F.3d at 640; *see also Loza v. Mitchell,* 705 F.Supp.2d 773, 860

(S.D. Ohio Mar. 31, 2010) (holding that defendant received a full and fair opportunity to litigate his Fourth Amendment claim where the trial court heard and denied his motion to suppress and the defendant subsequently raised the same Fourth Amendment claim on direct appeal); *Johnson v. Eppinger*, No. 1:19 CV 984, 2020 WL 8771326, at *14 (N.D. Ohio June 1, 2020) (same), *report and recommendation adopted*, 2021 WL 861509 (N.D. Ohio Mar. 8, 2021); *Long v. Watson*, No. 3:22-cv-503, 2022 WL 15522935, at *1 (N.D. Ohio Oct. 27, 2022) (same).

In his Traverse, Mr. Brown seeks to circumvent the bar against federal collateral review under *Stone* by seizing on the Supreme Court's statement that "a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced *at his trial*." (ECF #8 at PageID 379). He claims he is not challenging evidence introduced at trial because he entered a no contest plea and thus, his claim should be reviewed on the merits. (*Id.*). Mr. Brown does not identify case law supporting his position that a no-contest plea in the state trial court allows a petitioner to side-step the bar to a merits review of the Fourth Amendment claim. Case law within the Sixth Circuit indicates that *Stone* applies to the federal court's review of Fourth Amendment claims even when the petitioner pled no contest. *See Harding v. Russell*, 156 F.App'x 740 (6th Cir. 2005); *Scott v. Sheldon*, No. 19-3164, 2019 WL 4187702 (6th Cir. 2019); *Johnson v. Turner*, No, 1:13CV01173, 2015 WL 3967673 (N.D. Ohio June 30, 2015); *Coleman v. Richard*, No. 15-cv-1962, 2018 WL 400322 (N.D. Ohio Jan. 11, 2018); *Hays v. Bracy*, No. 5:22-CV-01103-JPC, 2024 WL 643166 (N.D. Ohio Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 639618 (N.D. Ohio Feb. 15, 2024).

Next, Mr. Brown asserts that his claim—that the police officers did not have reasonable articulable suspicion that he was engaged in, or about to be engaged in, criminal activity—is

11

"quantitatively and qualitatively different" from the issues in *Stone*, and therefore must be adjudicated on the merits. (ECF #8 at PageID 379). Not so. The Fourth Amendment's prohibition on unreasonable seizures allows temporary detentions, known as *Terry* stops, if there is "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968). *Stone* acts to preclude litigation of all Fourth Amendment claims raised on federal habeas review, including the correctness of the state court's decision on the reasonableness of an investigative stop, if the petitioner had a full and fair opportunity to litigate the claim in state court. *Stone*, 428 U.S. at 494-95. Described above, Ohio's procedural mechanism to adjudicate Fourth Amendment claims is adequate and there is no indication the state failed to provide Mr. Brown the mechanism to address his Fourth Amendment claim. Thus, his claim is not cognizable on federal habeas review.

Therefore, I recommend the District Court **DISMISS** Mr. Brown's petition.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least,

12

that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Brown has not made a substantial showing that he was denied any constitutional right, and jurists of reason would not find it debatable whether he was given a full and fair opportunity to litigate his Fourth Amendment claim. Therefore, I recommend the District Court **DENY** Mr. Brown a COA.

## CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** the petition and **DENY** a certificate of appealability.

Dated: December 17, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and

Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).